AARON SPOLIN (State Bar No. 310379)
ClientMail@SpolinLaw.com
SPOLIN LAW P.C.
11500 W. Olympic Blvd., Suite 400
Los Angeles, CA 90064
(310) 424-5816
(310) 312-4551

Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| REMBER GENARO MOLINA, | Case No.: |
| Petitioner, | **Petitioner Rember Genaro Molina's Petition for Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254** |
| vs. | |
| GENA JONES, Acting Warden, California Health Care Facility, Stockton, | |
| Respondent. | |

Petitioner, Rember Genaro Molina (hereinafter "Petitioner"), through undersigned counsel, files this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and in support thereof, avers as follows:

### A.    Procedural History

1.    Petitioner is Rember Genaro Molina.

2.      Petitioner is unlawfully confined in the California Health Care Facility, Stockton pursuant to a judgment of the Superior Court of California for San Mateo County in *People v. Molina,* case number 17SF002494.

3.      The California Health Care Facility, Stockton is located at 7707 Austin Road, Stockton, CA 95215.

4.      Gena Jones is the warden of the California Health Care Facility, Stockton.

5.      By way of information, the People charged Petitioner with 10 counts as follows: one count of sexual intercourse with a child 10 years of age or younger in violation of California Penal Code § 288.7(a) (Count 1); one count of sexual penetration of a child 10 years of age or younger in violation of P.C. § 288.7(b) (Count 2), five counts of forcible lewd or lascivious act upon a child under 14 years of age in violation of P.C. § 288(b)(1) (Counts 3, 5, 7, 8, and 9); two counts of attempted sexual penetration of a child 10 years of age or younger in violation of P.C. §§ 664, § 288.7(b) (Counts 4 and 6); and one count of continuous sexual abuse of a child under 14 years of age in violation of P.C. § 288.5(a) (Count 10). (1CT 10-19). Counts 3, 5, 7, 8, and 10 further alleged that Petitioner had substantial sexual conduct with the child pursuant to P.C. § 1203.066(a)(8).

6.      Following a jury trial, on July 6, 2018, Petitioner was found guilty of Counts 1, 2, 4, 6, and 10 as charged. With respect to Counts 3, 5, 7, 8, and 9, the

charges were reduced before the case was submitted, and the jury found Petitioner guilty of non-forcible lewd acts upon a child under 14 years of age in violation of P.C. § 288(a). (2CT 468-482; 10RT 1121-1127). The jury found true all allegations of substantial sexual conduct. (2CT 471, 474, 477, 479, 482; 10RT 1121-1127.)

7.    On October 12, 2018, the trial court sentenced Petitioner to a total sentence of 45 years' to life imprisonment. (2CT 565-569.) The sentence consisted of 25 years to life for Count 1; four consecutive terms of five years for Counts 5, 7, 8, and 9; and a concurrent term of 15 years to life for Count 2. (2CT 565-569, 581-584.) The trial court stayed the sentences for Counts 3, 4, 6, and 10. (2CT 565-569, 581-584.)

8.    Petitioner pursued a timely appeal in the First Appellate District (No. A155785). By order dated December 8, 2021, the Appellate Court found that Petitioner was "improperly convicted of both continuous sexual abuse under Penal Code section 288.5 and the specific sex offenses involving the child during the same time period." *See People v. Molina*, No. A155785, 2021 Cal. App. Unpub. LEXIS 7679, at *1 (Dec. 8, 2021). The appellate court further found that there were "several sentencing errors that must be corrected." *Id.* The appellate court vacated the conviction under P.C. § 288.5, corrected the sentence on counts 3, 5, 7, 8, and 9 to consecutive three-year terms, and affirmed the judgment in all other respects. *Id.* at *1, 25. The foregoing resulted in a total sentence of 40 years' imprisonment.

9.    Petitioner filed a petition for review in the California Supreme Court (No. S272603). On February 16, 2022, the petition for review was "denied without prejudice to any relief to which defendant might be entitled after this court decides *People v. Kopp*, S257844." *People v. Molina*, No. S272603, 2022 Cal. LEXIS 839, *1 (Feb. 16, 2022).

B.    **Factual History**

10.    The following factual summary is quoted from the unpublished appellate court opinion. It is adopted to the extent the facts are not contradicted elsewhere:

> Defendant was charged by information with 10 counts arising out of his sexual abuse of R.D. between May 28, 2010 and May 27, 2016. Specifically, defendant was charged with sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a) — count 1); sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b) — count 2); five counts of commission of a forcible lewd or lascivious act upon a child under 14 years (§ 288, subd. (b)(1) — counts 3, 5, 7, 8 and 9); two counts of attempted sexual penetration of a child 10 years of age or younger (§§ 664, 288.7, subd. (b) — counts 4, 6); and one count of continuous sexual abuse of a child under 14 years of age (§ 288.5, subd. (a) — count 10). Four of the five forcible lewd act charges (counts 3, 5, 7 & 8) and the continuous sexual abuse charge (count 10) included allegations that defendant had substantial sexual conduct with the child (§ 1203.066, subd. (a)(8)).
>
> Trial testimony established that R.D. lived with her mother, father and two siblings. Defendant, her uncle, would often spend several nights a week at their home. In September 2016, R.D.'s older sister disclosed to a teacher that defendant inappropriately touched R.D. This disclosure led to a police investigation. As part of the investigation R.D. was interviewed at the county's Child Abuse Listening, Interviewing, and

Coordination Center (CALICO). Transcripts of the interviews were introduced at trial during R.D.'s testimony.

R.D., who was eight years old at the time of the interview, began by saying that her uncle was really nice to her. She knew that she was being interviewed because of things her sister had told the teacher. She expressed concern that she and her siblings would be removed from her parents' home because of the disclosures. She explained that her mother had told her and her sister to talk only to her and that if they said "something wrong," they would be taken away from their family. After being reassured by the interviewer that the interviewer was trying to keep R.D. safe, not remove her from her home, R.D. reported six incidents in which defendant sexually abused her.

The first occasion that R.D. could remember, she and defendant were "covered up with the blanket" on the bed in the bedroom. Defendant grabbed her shorts and underwear and pulled them down. He tried to put his finger inside her but she screamed and her mother and sister came in and defendant left. Another time, when she was seven, she awoke to find defendant reaching under her pants and underwear with his hand. He "tried to go inside [her] private part," but she slapped him and "kicked him out." On a different occasion when she was still seven years old, defendant pulled her pants and underwear off and touched her inside her "private part" with his finger. She told him to stop but "he didn't care, he just did it." On another occasion, while covered with a blanket watching a movie on the couch, defendant took his pants and underwear off and dropped her hand on his penis. On a separate occasion, defendant grabbed her hand and put it on top of his penis. It felt "round" and "wet." She saw defendant "shaking it" and "white stuff started to come out." Finally, on one occasion defendant took his pants and underwear off and stood in front of her as she sat on the couch. He held her legs up and penetrated her vagina with his penis.

After describing several of the incidents, R.D. also described how either her mother, sister or father was there and stopped the abuse. She also reported that she told her mother after several incidents, and her mother ordered defendant out of the house. Somewhat confusingly, she told the interviewer that after each incident, defendant left and she "never saw him again."

Shortly after her interview, R.D. spoke with a police investigator and told the investigator that everything she had reported was not "actually true." R.D.'s interview with the police investigator was recorded and played for the jury. In the recording, when asked about her descriptions of the incident in which defendant penetrated her on the couch, R.D. said, "It wasn't true, um, because I made it up." When asked why she would make it up, she said, "I don't know. [¶] . . . [¶] It just flew out my [*sic*] mind for no reason."

At trial, R.D., who was then 10 years old, testified that defendant is her favorite uncle and that he has never made her feel uncomfortable or touched her inappropriately. She claimed not to remember telling the interviewer about the incidents she had described previously. After the recording of her CALICO interview was played, R.D. said that she still did not remember telling the interviewer about the incidents and testified that the incidents did not happen. She testified that the things she had said were not true, she was sad that she had said them and that she wished she could take them back.

R.D.'s parents and older sister all testified that the older sister's initial report to her teacher was based on a misunderstanding. Defendant had kicked a ball towards R.D., hitting her near her "private part" so he rubbed the area to make her feel better. The older sister also testified that she was present when defendant held R.D.'s hand near his penis. He and R.D. had been playing and R.D. punched defendant in his penis. When R.D. went to hit him again, he covered his penis with his hand. He was holding her hand but not forcing her to touch him. R.D.'s mother testified that her daughters had reported other incidents to her, but explained, "When I talked to them and I asked them, 'Are you certain that he really did touch you?' they finally told me, 'No, Mom.' Because, honestly, they lie about many things. And that's why I asked them again if it was true that he had touched them; and then, after that, they told me, 'No, Mom.'"

Two experts testified about the child sexual abuse accommodation syndrome (CSAAS or the syndrome). The prosecutor's expert testified that the syndrome sets forth several behaviors commonly observed in children who report abuse that adults might not understand. She explained that the syndrome provides a "way of organizing the conversation" about child sexual abuse, but it does not operate "as a

checklist to say, 'Yes, this kid's sexually abused or not sexually abused.'" As relevant here, she testified that sometimes a child might be inconsistent in relating details of the abuse and might include "implausible or fantastical" details in her report. Also, a child might disclose abuse and later recant if the child experiences the consequences of disclosure or if they have "poor maternal support."

Defendant's expert testified that was based on the initial author's observations, not empirical evidence, and that, as such, it has no "positive use . . . at all." He explained that the behaviors addressed in the syndrome could be present in a false allegation as well as a true allegation. He also cited studies that showed that 97 percent of children making true allegations of sexual abuse were consistent in describing the "core" details, 94 percent did not include "fantastical" details, and only 4 percent of children making true allegations recanted. He also emphasized that CSAAS theory was not intended to be "used in courtrooms to try to distinguish true allegations from false allegations" and that the theory does not have "discriminating power to differentiate true allegations from false allegations."

Defendant was convicted of all charges. The jury also found the allegations of substantial sexual conduct true.

Defendant was sentenced to 50 years to life in prison. Defendant timely filed a notice of appeal.

"

*Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at \*1-8 (footnotes omitted).

## C.    Claims for Relief

## I.    Claim One

11.    Paragraphs 1 through 10 are hereby incorporated by reference.

12.    Petitioner was denied federal constitutional rights under the Fifth, Sixth, and Fourteenth Amendments when the trial court admitted expert testimony

about Child Sexual Abuse Accommodation Syndrome (CSAAS) which rendered the trial fundamentally unfair.

13. Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

14. The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim One is hereby incorporated by reference.

## II.    Claim Two

15. Paragraphs 1 through 14 are hereby incorporated by reference.

16. Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment where the trial court reduced the prosecution's burden of proof by giving a modified jury instruction (CALCRIM No. 1193) which permitted the jury to consider the CSAAS evidence as proof that the victim was being truthful.

17. Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

18.    The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Two is hereby incorporated by reference.

### III.    Claim Three

19.    Paragraphs 1 through 18 are hereby incorporated by reference.

20.    Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment where the prosecutor knowingly presented false testimony to the extent it introduced a recorded interview in which the victim made the allegations against Petitioner that formed the basis of the charges and then introduced the alleged victim's testimony at trial in which she denied all the allegations that she made in the recorded interview.

21.    Because Petitioner's current incarceration is unlawful and unconstitutional, this Honorable Court should grant the within Writ and release Petitioner.

22.    The portion of the attached Memorandum of Points and Authorities, including all facts and arguments therein, related to Claim Three is hereby incorporated by reference.

### D.    Prayer for Relief

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

1. Take judicial notice of the transcripts, records, and files in *People v. Rember Genaro Molina*: San Mateo County, case number 17SF002494; California Court of Appeal, First District, Division Four, case number A155785; California Supreme Court case number S272603.

2. Order Respondent and the People of California to file and serve a certified copy of the record on appeal and show cause why Petitioner is not entitled to the relief sought;

3. Grant a hearing to enable Petitioner to satisfy his remaining burden of proof, namely that the error had a substantial and injurious effect or influence in determining the jury's verdict;

4. Find that the state court unreasonably determined the facts and unreasonably applied clearly established Federal law;

5. Grant this Petition for Writ of Habeas Corpus; and

6. Grant Petitioner any additional, appropriate relief as ordered by this Honorable Court.

Dated: May 8, 2023                           Respectfully submitted,


                                             SPOLIN LAW P.C.

                                    By:      /s/ Aaron Spolin
                                             Aaron Spolin
                                             Attorney for Petitioner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **VERIFICATION**

I, Aaron Spolin, hereby declare as follows:

I am an attorney admitted to practice law in the State of California. I represent Petitioner herein, who is confined and restrained of his liberty at the California Health Care Facility, Stockton, in San Joaquin County. I have read the foregoing Petition for Writ of Habeas Corpus and am informed and believe the allegations therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 8, 2023, at Los Angeles, California.


/s/ Aaron Spolin
Aaron Spolin

AARON SPOLIN (State Bar No. 310379)
ClientMail@SpolinLaw.com
SPOLIN LAW P.C.
11500 W. Olympic Blvd., Suite 400
Los Angeles, CA 90064
(310) 424-5816
(310) 312-4551

Attorney for Petitioner

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

REMBER GENARO MOLINA,

      Petitioner,

  vs.

GENA JONES, Acting Warden, California
Health Care Facility, Stockton,

      Respondent.

Case No.:

**Memorandum of Points and Authorities**

     Petitioner, through counsel Aaron Spolin, hereby submits the following Memorandum of Points and Authorities in support of his Petition, filed pursuant to 28 U.S.C. § 2254.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................3

1.  Statement of the Case ................................................8

2.  Law and Argument .....................................................8

  A.  Habeas Standards ...................................................8

  B.  Timeliness...........................................................10

  C.  Exhaustion ..........................................................12

  D.  Substantive Claims ..............................................13

    1.  Claim One— Petitioner was denied his federal constitutional rights to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments when the trial court admitted expert testimony about Child Sexual Abuse Accommodation Syndrome which rendered the trial fundamentally unfair. ...............................................13

    2.  Claim Two - Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment where the trial court reduced the prosecution's burden of proof by giving a modified jury instruction (CALCRIM No. 1193) which permitted the jury to consider the CSAAS evidence as proof that the victim was being truthful. .............................25

    3.  Claim Three - Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment and right to confront witnesses under the Sixth Amendment where the prosecutor knowingly presented false testimony to the extent it introduced a recorded interview in which the victim made the allegations against Petitioner that formed the basis of the charges and then introduced the alleged victim's testimony at trial in which she denied all the allegations in the recorded interview. .............31

CONCLUSION .....................................................................41

CERTIFICATE OF SERVICE ...............................................42

# TABLE OF AUTHORITIES

## Cases

*Baldwin v. Reese,* 541 U.S. 27 (2004) ....................................................13

*Bell v. Cone,* 535 U.S. 685 (2002) ..........................................................9

*Blount v. Commonwealth*, 392 S.W.3d 393 (Ky. 2013) ..........................20

*Bowen v. Roe*, 188 F.3d 1157 (9th Cir. 1999) .........................................12

*California v. Green*, 399 U.S. 149 (1970) ......................................... 37, 38

*Chapman v. California*, 386 U.S. 18 (1967).................................... 15, 40

*Commonwealth v. Dunkle*, 602 A.2d 830 (Pa. 1992) ..............................23

*Davis v. Alaska*, 415 U.S. 308 (1974)....................................................37

*Edwards v. Carpenter,* 529 U.S. 446 (2000) ..........................................12

*Estelle v. McGuire*, 502 U.S. 62 (1991)..................................................19

*Gimenez v. Ochoa*, 821 F.3d 1136 (9th Cir. 2016)..................................36

*Greene v. Fisher*, 565 U.S. 34 (2011).......................................................9

*Harrington v. Richter,* 562 U.S. 86 (2011)...............................................8

*Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991) ..........................18

*Johnson v. Williams*, 568 U.S. 289 (2013) ...................................... passim

*MacFarlane v. Walter,* 179 F.3d 1131 (9th Cir. 1999).............................10

*Maryland v. Craig*, 497 U.S. 836 (1990)................................................38

*Middleton v. McNeil*, 541 U.S. 433 (2004).............................................27

*Moses v. Payne,* 555 F.3d 742 (2009)........................................................................10

*Napue v. Illinois*, 360 U.S. 264 (1959) ....................................................... 18, 36, 37

*Neder v. United States*, 527 U.S. 1 (1999)...............................................................30

*Newkirk v. Commonwealth*, 937 S.W.2d 690 (Ky. 1996)..........................................20

*O'Brien v. Dubois*, 145 F.3d 16 (1st Cir. 1998) ......................................................10

*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999) ..........................................................12

*People v. Bowker*, 203 Cal. App. 3d 385 (1988) ......................................................23

*People v. Freeman*, 20 Cal. App. 488 (Cal. App. Ct. 1971)....................................37

*People v. Gonzales*, 16 Cal. App. 5th 494 (2017) ....................................................29

*People v. Housley*, 6 Cal. App. 4th 947 (1992) ........................................................26

*People v. Kopp*, S257844 (Cal. Sup. Ct.) ............................................................ 4, 12

*People v. McAlpin*, 812 P.2d 563 (Cal. 1991) .........................................................16

*People v. Molina*, No. A155785, 2021 Cal. App. Unpub. LEXIS 7679

  (Dec. 8, 2021) ................................................................................. passim

*People v. Molina*, No. S272603, 2022 Cal. LEXIS 839 (Feb. 16, 2022) ........... 4, 12

*Perry v. New Hampshire*, 565 U.S. 228 (2012)........................................................18

*Perry v. Rushen*, 713 F.2d 1447 (9th Cir. 1983)......................................................19

*Roman v. Estelle,* 917 F.2d 1505 (9th Cir. 1990) ....................................................12

*State v. Davis*, 581 N.E.2d 604 (Ohio App. Ct. 1989)..............................................24

*State v. J.L.G.*, 190 A.3d 442 (N.J. 2018)................................................................21

*State v. Schimpf*, 782 S.W.2d 186 (Tenn. App. Ct. 1989) ........................................23

*United States v. Bagley*, 473 U.S. 667 (1985) ........................................36

*United States v. Mandujano*, 425 U.S. 564 (1976)........................................36

*United States v. Owens*, 484 U.S. 554 (1988)........................................ 38, 39, 40

*United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014) ........................................36

*Vasquez v. Hillary,* 474 U.S. 245 (1986) ........................................13

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................18

*Williams v. Taylor,* 529 U.S. 362 (2000) ........................................9

*Yarborough v. Alvarado,* 541 U.S. 652 (2004)........................................9

**Statutes**

28 U.S.C. § 2244(d)(1)........................................10

28 U.S.C. § 2244(d)(2)........................................10

28 U.S.C. § 2254 ........................................1, 7

28 U.S.C. § 2254(b)(1)(A) ........................................11

28 U.S.C. § 2254(d) ........................................ 7, 9, 15, 34

28 U.S.C. § 2254(d)(1)........................................8, 9

28 U.S.C. § 2254(d)(2)........................................9

28 U.S.C. § 2254(e)(1)........................................9

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ....... 7, 12, 15, 31

California Penal Code § 1203.066(a)(8)........................................2

California Penal Code § 288(a) ................................................................3

California Penal Code § 288(b)(1) ..........................................................2

California Penal Code § 288.5(a) ................................................... 2, 3, 10

California Penal Code § 288.7(a) ............................................................2

California Penal Code § 288.7(b) ............................................................2

California Penal Code § 664 ....................................................................2

**Other Authorities**

CALCRIM No. 1193 ................................................................... passim

Cara Gitlin, *Expert Testimony on Child Sexual Abuse Accommodation Syndrome:*

*How Proper Screening Should Severely Limit Its Admission*, 26 Quinnipiac L.

Rev. 497 (2008) ....................................................................................22

**Rules**

California Evidence Code § 1235 ............................................. 33, 34, 37

California Evidence Code § 1360 ............................................. 32, 33, 34

California Evidence Code § 352 .................................................... 14, 17

California Evidence Code § 770 ............................................................33

California Evidence Code § 801 ............................................................15

U.S. Sup. Ct. Rule 13.1 ........................................................................12

**Constitutional Provisions**

U.S. Const. amend. V .......................................................... 7, 13, 14, 18

U.S. Const. amend. VI .................................................................... passim

U.S. Const. amend. XIV .................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

### 1.    Statement of the Case

Petitioner hereby incorporates paragraphs 1-22 of his Petition for Writ of Habeas Corpus by a Person in State Custody, above, which includes the statement of facts.

### 2.    Law and Argument

### A.    Habeas Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter,* 562 U.S. 86, 97 (2011). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under 28 U.S.C. § 2254(d)(1), a state court's decision is "contrary to . . . clearly established Federal law," as determined by the United States Supreme Court, "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002). A state court's decision "involve[s] an unreasonable application of[ ] clearly established Federal law" as determined by the U.S. Supreme Court, within the meaning of § 2254(d)(1), "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. 362, 407 (2000). The Supreme Court has underscored that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Accordingly, this Honorable Court may not grant habeas relief if "fairminded jurists could disagree over whether" the state court's decision was correct. *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

The governing law is the law that existed at the time the state court rendered its decision. *Greene v. Fisher*, 565 U.S. 34, 40 (2011). With regard to Ninth Circuit Court of Appeals opinions, such may be persuasive authority for purposes of

determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help to determine what law is "clearly established." *See MacFarlane v. Walter,* 179 F.3d 1131, 1139 (9th Cir. 1999) (looking to Ninth Circuit caselaw to confirm that Supreme Court case clearly establishes a legal rule); citing *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998) (holding that "to the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue").

As to whether the state court unreasonably determined the facts in light of the evidence presented, the statement of facts from the last reasoned state court decision "is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." *Moses v. Payne,* 555 F.3d 742, 746 n. 1, 751 (2009), citing 28 U.S.C. § 2254(d)(1)-(2) & (e)(1).

**B.    Timeliness**

Pursuant to 28 U.S.C. § 2254(d), a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(d)(1). The limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Petitioner respectfully submits that his instant petition is timely. On October 12, 2018, Petitioner was sentenced to 45 years' to life in state prison. Petitioner filed a timely notice of appeal, and on December 8, 2021, the appellate court vacated the conviction under P.C. § 288.5, corrected the sentence on counts 3, 5, 7, 8, and 9 to consecutive three-year terms, and affirmed the judgment in all other respects, resulting in a total sentence of 40 years' imprisonment. *People v. Molina*, No. A155785, 2021 Cal. App. Unpub. LEXIS 7679, at *1 (Dec. 8, 2021). Petitioner filed a petition for review in the California Supreme Court which, on February 16, 2022, "denied without prejudice to any relief to which defendant might be entitled

1    after this court decides *People v. Kopp*, S257844." *People v. Molina*, No. S272603,

2    2022 Cal. LEXIS 839, *1 (Feb. 16, 2022).

3        Therefore, Petitioner's judgment of sentence became final on May 17, 2022,

4    90 days after the California Supreme Court denied his petition for review on direct

5

6    appeal and Petitioner refrained from petitioning the United States Supreme Court for

7    writ of certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); U.S. Sup.

8
     Ct. Rule 13.1. Petitioner timely files the instant petition before May 17, 2023.
9

10   **C.    Exhaustion**

11       Pursuant to 28 U.S.C. § 2254(b)(1)(A), "[a]n application for a writ of habeas
12
     corpus on behalf of a person in custody pursuant to the judgment of a State court
13

14   shall not be granted unless it appears that . . . the applicant has exhausted the

15   remedies available in the courts of the State[.]" Claims must be raised in accordance
16

17   with state procedural rules. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

18   Fundamental to federal habeas is the principle that the highest state court should be
19
     given a fair opportunity to first rule on Petitioner's claims. *O'Sullivan v. Boerckel,*
20

21   526 U.S. 838, 847 (1999) (exhaustion requires presentation to highest state court

22   where presentation is part of the state's ordinary appellate procedure). Appellate
23

24   issues are only exhausted to the extent that the particular issue is included in a

25   petition for review to the California Supreme Court. *Roman v. Estelle,* 917 F.2d
26
     1505, 1506 (9th Cir. 1990). The federal claim must be "fairly presented" to the state
27

28

courts. *Baldwin v. Reese,* 541 U.S. 27 (2004). Additional evidence may be admitted that does not "fundamentally alter" the claim originally presented to the state courts. *Vasquez v. Hillary,* 474 U.S. 245, 260 (1986).

Petitioner raised claims one, two, three, and four in the California Court of Appeal, which addressed some of the federal the claims on the merits and inadvertently failed to address others. *See* Exhibit A; *see also Molina*, 2021 Cal. App. Unpub. LEXIS 7679.  He then raised the claims in a petition for review to the California Supreme Court, which denied the petition. *See* Exhibit B; *see also Molina*, 2022 Cal. LEXIS 839, at *1. Thus, the claims are exhausted.

### D.    Substantive Claims

**1.    Claim One— Petitioner was denied his federal constitutional rights to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments when the trial court admitted expert testimony about Child Sexual Abuse Accommodation Syndrome which rendered the trial fundamentally unfair.**

Petitioner maintains that this Court should not pay AEDPA deference to the state court's adjudication of this claim as the state court overlooked the federal claim. *See Johnson v. Williams*, 568 U.S. 289, 302-03 (2013). In the event, however, that this Court finds that AEDPA deference appropriate, Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The California State courts identified the correct, governing legal rule but unreasonably applied it to the facts. Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the last reasoned state court decision is not entitled to the presumption of correctness.

### a. Petitioner exhausted his federal fair-trial and due-process claims in the California state courts.

Here, Petitioner filed a motion "to exclude certain evidence of myths and child accommodation syndrome and testimony on characteristics of molest (sic) victims." *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, *8. The prosecution filed a motion asking the court to permit such evidence. The court granted the prosecution's motion "with the proviso that the expert will not render any opinion as to whether the victim was actually molested in this case . . . and not to render any opinion that the [alleged victim] suffers from the accommodation syndrome." *Id.* at *8-9.

On direct appeal, Petitioner argued that admission of the CSAAS testimony violated the *Kelly*/*Frye* rule; the CSAAS testimony was irrelevant as it was well-established that jurors no longer hold the misconceptions about child abuse victims' behaviors that originally justified admission of such testimony; the evidence should have been excluded under California Evidence Code § 352 as it was more prejudicial than probative; and it violated Petitioner's Fifth, Sixth, and Fourteenth Amendment

right to a fair trial and due process. Exhibit A, p. 43-71. Petitioner further argued that the prosecution could not prove the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24 (1967). *Id.* at 72. In particular, Petitioner noted that both RD and XD testified at trial that their statements implicating Petitioner in the charged crimes was false. *Id.* at 73. There was no other evidence implicating Petitioner, and R.D.'s parents and Petitioner provided explanations for the girls' statements. *Id.* Accordingly, absent the CSAAS testimony, there was a reasonable probability that at least one juror believed that R.D.'s and X.D.'s prior statements were questionable, causing them to find that the prosecution had not proven the case beyond a reasonable doubt. *Id.* The CSAAS testimony, however, bolstered the credibility of R.D.'s prior statements implicating Petitioner. *Id.* Moreover, Petitioner argued that the jury's lengthy deliberations and their request for a readback of the teacher's testimony regarding X.D.'s statements implicating Petitioner, indicated the closeness of the case. *Id.* at 75.

The state appellate court rejected Petitioner's state claims, finding that the CSAAS testimony in this case was not "new experimental scientific evidence not previously accepted in court." *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *9-10 (internal quotation marks omitted). Moreover, it "was admitted under Evidence Code section 801 because it is related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." *Id.* at *10.

1    Finally, the state appellate court acknowledged that "other jurisdictions have
2    recognized that changes in public perception of the victims of child sexual abuse
3    have questioned and even undermined the rationale for the admission of CSAAS
4    evidence," but it was "bound by the California Supreme Court's decision in" *People*
5    *v. McAlpin*, 812 P.2d 563 (Cal. 1991). Importantly, the state appellate court failed to
6    address Petitioner's federal fair trial and due process arguments, framing the
7    argument as only an evidentiary issue.
8

9           **b. The habeas court owes no AEDPA deference to the state courts'**
              **adjudication Petitioner's fair-trial and due-process claims as the**
10             **state appellate court did not address them.**

11           This Court owes no AEDPA deference to the state appellate court's opinion
12   as it failed to address the federal claims presented by Petitioner with respect to the
13   CSAAS evidence. *See Johnson*, 568 U.S. at 302-03 . Under 28 U.S.C. § 2254(d), a
14   federal court owes AEDPA deference only to claims that were "*adjudicated on the*
15   *merits* in State court proceedings." *See id.* (emphasis added). Although there is a
16   presumption that a state court considered a federal constitutional claim, that
17   presumption is rebuttable. *Id.* at 302-03. "When the evidence leads very clearly to
18   the conclusion that a federal claim was inadvertently overlooked in state court, §
19   2254(d) entitles the prisoner to an unencumbered opportunity to make his case
20   before a federal judge." *Id.* at 303.

Here, the state appellate court clearly overlooked Petitioner's federal claims with respect to the CSAAS evidence. It analyzed his claim under only state evidentiary rules as it cited only to state evidentiary rules and state precedent addressing those state rules. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *9-11. The state appellate court failed to cite to *any* federal cases in its analysis or mention key due-process analysis phrases such as "fundamentally unfair." *Johnson*, 568 U.S. at 303. (the presumption that a claim was adjudicated on the merits is overcome where "a provision of the Federal Constitution or a federal precedent was simply mentioned in passing in a footnote or was buried in a string cite"). Moreover, the state appellate court concluded that "[t]he court did not abuse its discretion under Evidence Code section 352 in admitting the expert testimony. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *11. Accordingly, as the state court overlooked the federal claims, this Court reviews the claim *de novo*. *See Johnson*, 568 U.S. at 307.

### c.  Relevant Law

In this instance, the state-law evidentiary rules were less protective than the federal due-process standard that prohibits the introduction of evidence that renders a trial fundamentally unfair even if that evidence comports with state evidentiary rules. *See id.* at 301 ("the federal claim may be regarded as having been adjudicated on the merits" where the state-law rule "is at least as protective as the federal standard"). The Supreme Court has clearly instructed that "errors that undermine the

confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 375 (2000). "[S]tate and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). The Due Process Clause, however, prohibits evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice." *Id.* (internal quotation marks omitted); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) (finding that the Due Process Clause forbids the prosecution's "knowin[g] use [of] false evidence").

The Ninth Circuit has explained that state evidentiary errors amount to the violation of due process guaranteed under the Fifth and Fourteenth Amendments to the U.S. Constitution when "the evidence so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). The "issue is not whether introduction of [the evidence] violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process." *Id.* at 920-21. Although a state evidentiary ruling may comport with state evidentiary rules, "state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness." *Id.* at 919; *see also Perry v. Rushen*,

713 F.2d 1447, 1453 (9th Cir. 1983) ("Due process draws a boundary beyond which state rules cannot stray.").

In *Estelle v. McGuire*, the Supreme Court considered whether expert testimony about "battered child syndrome" violated the Petitioner's right to due process. 502 U.S. 62, 68 (1991). The Court explained:

> The demonstration of battered child syndrome 'simply indicates that a child found with [serious, repeated injuries] has not suffered those injuries by accidental means.' *Id.*, at 507, 95 Cal. Rptr. at 921.Thus, evidence demonstrating battered child syndrome helps to prove that the child died at the hands of another and not by falling off a couch, for example; it also tends to establish that the "other," whoever it may be, inflicted the injuries intentionally. When offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is relevant even though it does not purport to prove the identity of the person who might have inflicted those injuries.

*Id.* The Court reasoned that expert testimony about battered child syndrome was probative of the intent element of second-degree murder as it suggested that the child's death "was the result of an intentional act by *someone*." *Id.* at 68-69 (emphasis in original). "[N]othing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point." *Id.* at 70. As the Court concluded that the evidence was relevant to an issue in the case, it declined to further consider the due-process issue. *See id.*

### d. Admission of the CSAAS evidence denied Petitioner a fair trial, rendered his trial fundamentally unfair, and necessarily prejudiced Petitioner.

There is ample evidence that CSAAS is junk science and some states have banned it for that reason. The Supreme Court of Kentucky explained:

> we have consistently held that evidence of CSAAS was not admissible because it lacked scientific acceptance. In *Newkirk v. Commonwealth*, 937 S.W.2d 690, 43 9 Ky. L. Summary 27 (Ky. 1996), we noted that "[i]n an unbroken line of decisions . . . this Court has repeatedly expressed its distrust of expert testimony which purported to determine criminal conduct based on a perceived psychological syndrome." *Id.* at 690-91. The multiple rationales for the specific rule against CSAAS testimony include "the lack of diagnostic reliability, the lack of general acceptance within the discipline from which such testimony emanates, and the overwhelmingly persuasive nature of such testimony effectively dominating the decision-making process, uniquely the function of the jury." *Id.* at 691.

*Blount v. Commonwealth*, 392 S.W.3d 393, 396 (Ky. 2013).

More recently, the New Jersey Supreme Court rejected CSAAS testimony, explaining:

> [N]either the American Psychiatric Association nor the American Psychological Association has recognized CSAAS. The syndrome does not appear in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), the mental health field's authoritative list of mental disorders. And the notion of a child abuse accommodation "syndrome" has been examined, critiqued, and undermined by a number of scientific studies.

> Based on what is known today, it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony. We find continued scientific support for only one aspect of the theory -- delayed disclosure -- because scientists generally

accept that a significant percentage of children delay reporting sexual abuse.

*State v. J.L.G.*, 190 A.3d 442, 446 (N.J. 2018).

The New Jersey Supreme Court's rejection of CSAAS was influenced by experts in the field. *Id.* at 462. With respect to the denial aspect of CSAAS, the court explained:

> Other experts concluded that most children do not deny abuse. Dr. London's 2005 article examined 17 studies and found that "when directly questioned in a formal setting, only a small percentage of abused children" deny abuse. London et al. (2005), at 217, 220. Most disclose in the first or second interview. *Id.* at 217. In her expert report, Dr. Bruck, a co-author of the London studies, noted that rates of denial "in assessment interviews were highly variable" and ranged from 4 to 76%. See London et al. (2008), at 35. In her judgment, weaker studies -- that involved children later found to have made false allegations or children who may have been subjected to suggestive techniques, for example -- produced higher rates of denial. Studies with better methodologies produced low rates. See also Zajac et al., at 3-4 ("[D]enial . . . during formal investigation appear[s] to be the exception . . . ."); McGuire & London, at 180-81 (reviewing studies and noting that "majority of abused children who come before authorities will disclose when questioned directly").

> Dr. Brainerd also noted in his report that children who are suspected victims of sexual abuse "overwhelmingly disclose that they have been abused" when they participate in forensic interviews.

> There does not appear to be a consensus among the experts, or in the scientific literature, on the subject of false denials.

*Id.* at 462.

Here, the prosecution introduced CSAAS expert testimony through Miriam Wolf, a licensed clinical social worker and a forensic interview specialist. She

testified that CSAAS's first component is secrecy and explains why an abused child does not disclose the abuse. (7RT 814-815.) The second component is helplessness, which explains why a child is unable to understand what to do after sexual abuse. (7RT 816.) The third component is entrapment and accommodation, which explains the abused child's perception that she or he is stuck without help and must learn to cope with the abuse. (7RT 817-818.) Wolf explained that the fourth component of CSAAS explains why a report of the abuse may be delayed as the child does "not relate an event with a clear beginning, middle and end, with everything that happened disclosed all at one time." (7RT 820-822.) The fifth component, Wolf explained, is recantation, which explains why many sexual abuse victims recant their accusations about the abuse. (7RT 822-823.) She further noted that a victim is more likely to recant their accusations when the victim is close to the abuser. (7RT 833-834.) She further explained that "abused children come up with implausible or fantastical claims of someone rescuing them in order to cope with the abuse," and "[s]ome children incorporate these false claims as facts into their truthful reports." (7RT 825-828.)

Unlike in the expert testimony at issue in *Estelle*, the expert testimony regarding CSAAS was irrelevant as jurors no longer hold misconceptions about the actions of sexually abused children and there was no evidence that a juror in this case held misconceptions about abused children's behaviors. *See People v. Bowker*,

203 Cal. App. 3d 385, 391 (1988) (explaining that CSAAS testimony that explains delayed reporting, recantation, and inconsistent stories is admissible to "disabuse" jurors of common misconceptions). Courts and experts have countered the assumption that jurors still hold misconceptions about child victims. *See* Cara Gitlin, *Expert Testimony on Child Sexual Abuse Accommodation Syndrome: How Proper Screening Should Severely Limit Its Admission*, 26 Quinnipiac L. Rev. 497, 525 (2008).

> In 1992, the Pennsylvania Supreme Court explained:
>
> It is understood why sexually abused children do not always come forward immediately after the abuse: They are afraid or embarrassed; they are convinced by the abuser not to tell anyone; they attempt to tell someone who does not want to listen; or they do not even know enough to tell someone what has happened. In the case sub judice, the expert testified that a "major reason would be any threats that were made to the child." Also, she stated that "they also could not disclose for fear of embarrassment, for fear they are damaged in some way, they are not a perfect person." "They do not disclose out of fear of loss that they may have to leave the home, that someone within the home may have to leave them . . . ." All of these reasons are easily understood by lay people and do not require expert analysis.

*Commonwealth v. Dunkle*, 602 A.2d 830, 836 (Pa. 1992). The Pennsylvania Supreme Court further explained that expert testimony was not necessary to explain why abused children omit or cannot recall details as it was within the common knowledge of jurors. *Id.* at 183-84; *see also State v. Schimpf*, 782 S.W.2d 186, 193-94 (Tenn. App. Ct. 1989) (finding CSAAS expert testimony admitted erroneously as it "invaded the jury's province" as it "ultimately went to credibility" which "is a

matter only for the jury" and that "it could only have confused and misled [the jurors]"); *see also State v. Davis*, 581 N.E.2d 604, 611 (Ohio App. Ct. 1989) (CSAAS evidence inadmissible where the victim is knowledgeable and competent to testify).

Here, as courts and experts have noted, CSAAS expert testimony was not necessary to correct jurors' misconceptions about the behavior of child sexual abuse victims. Moreover, there was no evidence that any particular juror held these misconceptions. The CSAAS expert testimony could have only worked to bolster R.D.'s testimony from her CALICO interview implicating Petitioner—the same testimony that she recanted at trial. By so doing, the CSAAS expert testimony invaded the jury's province of determining credibility and worked to lower the prosecution's burden of proving its case beyond a reasonable doubt.

Admission of this junk science violated Petitioner's rights to a fair trial and due process. Indeed, the CSAAS expert testimony could only permit the jurors to conclude that R.D.'s initial statements implicating Petitioner were truthful and that she was acting consistently with child sexual abuse victims. The testimony, therefore, worked to evoke sympathy for R.D. and improperly bolstered the credibility of her initial statements. Moreover, unlike in *Estelle*, there was no permissible inference to be drawn from the testimony. As a result, admission of the CSAAS expert testimony rendered Petitioner's trial fundamentally unfair.

As admission of the CSAAS expert testimony denied Petitioner the right to a fair trial and due process under either *de novo* review or under the deferential AEDPA standard, the Petition for Writ of Habeas Corpus should be granted. Alternatively, this Court should grant an evidentiary hearing.

2.    **Claim Two - Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment where the trial court reduced the prosecution's burden of proof by giving a modified jury instruction (CALCRIM No. 1193) which permitted the jury to consider the CSAAS evidence as proof that the victim was being truthful.**

Petitioner maintains that this Court should not pay AEDPA deference to the state court's adjudication of this claim as the state court overlooked the federal claim. *See Johnson*, 568 U.S. at 302-03. In the event, however, that this Court finds that AEDPA deference appropriate, Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The California State courts identified the correct, governing legal rule but unreasonably applied it to the facts. Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the last reasoned state court decision is not entitled to the presumption of correctness.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a. Petitioner exhausted his federal fair-trial and due-process claims in the California state courts.

At trial, the trial court gave a modified version of CALCRIM No. 1193. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *11. The court, however, refused to give Petitioner's proposed jury instruction clarifying the proper use of CSAAS expert testimony. (1CT 159.)

On direct appeal and in his petition for discretionary review to the California Supreme Court, Petitioner argued that the modified CALCRIM No. 1193 instruction violated Petitioner's right to due process as it reduced the prosecution's burden of proof. Exhibit A, p. 77; Exhibit B, p. 19. In particular, Petitioner maintained that the instruction "effectively instructs the jurors that they may take such testimony as evidence of the defendant's guilt" as it does not explain "that 'the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true.'" Exhibit A, p. 77, 82 (quoting *People v. Housley*, 6 Cal. App. 4th 947, 956 (1992)).

The state appellate court rejected the claim, explaining: "The pattern instruction expressly states that the expert's 'testimony about [the syndrome] is not evidence that the defendant committed any of the crimes charged against him.' Both experts also expressly warned that CSAAS is not a checklist or tool that can be used to say a child was abused." *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at * 12. It further concluded that:

CALCRIM No. 1193 . . . sufficiently advises the jury that the syndrome evidence may not be used to prove that defendant committed any of the charged crimes. Nothing in the instruction permits the jury to conclude that because the victims' behavior is consistent (or not inconsistent) with that of other child victims of sexual assault, defendant necessarily committed such abuse.

*Molina*, 2021 Cal. App. Unpub. LEXIS 7679, *13-14.

### b.  Relevant Law

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The reviewing court must consider "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted). The instruction should not be assessed in isolation, "but must be viewed in the context of the overall charge." *Id.* (internal quotation marks omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (internal quotation marks omitted).

### c.  Instructing the jury under the modified CALCRIM No. 1193 instruction rendered Petitioner's trial fundamentally unfair and necessarily prejudiced Petitioner.

The trial court gave a modified version of CALCRIM No. 1193 as follows:

You've heard testimony from Dr. William O'Donohue and Miriam Wolf, a licensed clinical social worker, about child abuse accommodation theory. [¶] Testimony about this syndrome is not

> evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [R.D.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony.

*Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *11. The court, however, declined to give Petitioner's proposed jury instruction on CSAAS expert testimony, that read as follows:

> A witness had given testimony relating to the child sexual abuse accommodation syndrome. This evidence is not received and must not be considered by you as proof that the alleged victim's molestation is true. Child sexual abuse accommodation syndrome research is based upon an approach that is completely different from that which you must take to this case. The syndrome research begins with an assumption that a molestation has occurred, and seeks to describe and explain common reactions of children to that experience. As distinguished from that research approach, you are to presume the defendant innocent. The People have the burden of proving guilt beyond a reasonable doubt. Thus, you may consider the evidence concerning the syndrome and its effect only for the limited purpose of showing, if it does, that the alleged victim's reaction, as demonstrated by the evidence, are not inconsistent with her having been molested.

(1-CT 159.)

CALCRIM No. 1193 permitted the jurors to use the CSAAS expert testimony to evaluate R.D.'s credibility. Nowhere does it warn the jurors that the testimony should not be used to decide whether the allegations of sexual abuse are true. There is no instruction explaining that there is a difference between "the complaining witness is believable" and "the victim's molestation claim is true." Exhibit A, p .81 (internal quotation marks omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the prosecution relied on R.D.'s statements made during her CALICO interview that implicated Petitioner in the charged crime. The jury *had* to believe R.D.'s recanted statements made during her CALICO and police interviews were true to find Petitioner guilty. Otherwise, there was insufficient evidence to find Petitioner guilty. Accordingly, there was no difference between instructing the jury that R.D. was credible or instructing the jury that Petitioner was guilty. Essentially, the CSAAS instruction permitted the jury to use the CSAAS expert testimony as evidence that Petitioner committed the charged crimes. As a result, CALCRIM No. 1193 lessened the prosecution's burden of proving every element of the charged crimes beyond a reasonable doubt, thus denying Petitioner the right to due process.

In rejecting Petitioner's argument, the state appellate court noted that the argument had been rejected by other state courts, citing to *People v. Gonzales*, 16 Cal. App. 5th 494 (2017), for the proposition that the instruction correctly stated the law and advised the jury that it could not be used to prove that the defendant committed the offense. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, *13-14. The *Gonzales* court concluded that there was no conflict in CALCRIM No. 1193 because it permitted the jurors to find "both that [the victim]'s apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested." 16 Cal. App. 5th at 504.

Petitioner, however, maintains that this understanding of the effect of CALCRIM No. 1193 on jurors is unreasonable. "It is one thing to make jurors aware that behavior one would normally associate with fabricated accusations is 'not inconsistent' with having been molested; it is another for the jury to take away from this testimony that such behavior 'does not affect [the witness's] believability one way or the other.'" Exhibit A, p. 83-84. The instruction effectively permits jurors to dismiss traditional indications of credibility, including behaviors, testimonial gaps, and inconsistencies. The instruction does not merely inform the jurors that certain victim behaviors are not inconsistent with the victim having been abused. Permitting the jury to use the CSAAS testimony to ignore behavior that otherwise indicates credibility, put Petitioner at a great disadvantage. That conclusion is especially true, here, where Petitioner's only available defense depends on the jury questioning the alleged victim's credibility as assessed by her actions and statements.

Respondent cannot meet its burden in proving that the error did not contribute to Petitioner's conviction. This Court cannot conclude beyond a reasonable doubt that giving CALCRIM No. 1193 was "unimportant in relation to everything else the jury considered on the issue in question" or that the verdict was "surely unattributable" to the misleading instruction. *Neder v. United States*, 527 U.S. 1, 38 (1999). Indeed, the prosecution relied on R.D.'s CALICO statements,

which she recanted at trial. CALCRIM No. 1193 permitted the jury to use the CSAAS expert testimony to evaluate R.D.'s credibility. This instruction was particularly prejudicial where the expert testified about patterns of behavior of children who were known to have been abused that were directly applicable to R.D.'s behavior. Compiling the prejudice, the prosecution told the jury that R.D.'s recantation was the result of her sexual abuse based on the CSAAS evidence.

As CALCRIM No. 1193 permitted the jury to use the CSAAS expert testimony to bolster R.D.'s credibility during the CALICO interview, it lessened the prosecution's burden of proving all elements beyond a reasonable doubt. Accordingly, giving the instruction violated Petitioner's Fourteenth Amendment right to due process.

Based on the foregoing, this Court should grant the writ of habeas corpus. Alternatively, this Court should grant an evidentiary hearing.

**3.    Claim Three - Petitioner was denied his federal constitutional right to due process under the Fourteenth Amendment and right to confront witnesses under the Sixth Amendment where the prosecutor knowingly presented false testimony to the extent it introduced a recorded interview in which the victim made the allegations against Petitioner that formed the basis of the charges and then introduced the alleged victim's testimony at trial in which she denied all the allegations in the recorded interview.**

Petitioner maintains that this Court should not pay AEDPA deference to the state court's adjudication of this claim as the state court overlooked the federal claim.

*See Johnson*, 568 U.S. at 302-03. In the event, however, that this Court finds that AEDPA deference appropriate, Petitioner respectfully submits that the State court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, and based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The California State courts identified the correct, governing legal rule but unreasonably applied it to the facts. Further, for the reasons set forth below, Petitioner has forwarded clear and convincing evidence that the last reasoned state court decision is not entitled to the presumption of correctness.

### a. Petitioner exhausted his federal fair-trial and due-process claims in the California state courts.

Prior to trial, in anticipation that R.D. would recant her allegations against Petitioner, the prosecution filed a motion *in limine* seeking to introduce R.D.'s CALICO interview statements under California Evidence Code § 1360 as statements made by a sexual abuse victim under the age of 12 years and under California Evidence Code § 1235 as prior inconsistent statements. [1] Petitioner moved to exclude

---

[1] California Evidence Code § 1360 provides, in relevant part:

> (a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

the statements. (1CT 144-148; 1RT 7-8.) The prosecution further contended that the statements were admissible under California Evidence Code § 1235 as prior inconsistent statements. Petitioner moved to exclude the statements. (1CT 110, 118-120; 1RT 10-11.) After the trial court determined that R.D.'s statements in the CALICO interview were reliable, it ruled that the prosecution could introduce them under § 1360 if R.D. testified at trial. (1RT 18-19.) The trial court further found the prior statements admissible under § 1235 as the prosecutor represented that R.D.

---

(1) The statement is not otherwise admissible by statute or court rule.
(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.
(3) The child either:
    (A) Testifies at the proceedings.
    (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.
(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

California Evidence Code § 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." California Evidence Code § 770 provides:

Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless:
    (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or
    (b) The witness has not been excused from giving further testimony in the action.

would recant her statements at trial. (1RT 19.) At trial, the trial court overruled Petitioner's objection to R.D.'s CALICO statements. (3RT 326.)

On direct appeal, Petitioner argued that the prosecutor violated his right to due process under the Fourteenth Amendment and his right to confront witnesses under the Sixth Amendment when the prosecutor introduced at trial what she believed to be R.D.'s false testimony, that Petitioner did not abuse her, for the purpose of admitting her prior out-of-court statements in which R.D. says that Petitioner did abuse her. Exhibit A, p. 100-103. He again presented the argument in his petition for discretionary review to the California Supreme Court. Exhibit B, p. 28-32.

The California appellate court rejected Petitioner's claim as follows:

> Defendant makes the surprising contention that the prosecutor violated his constitutional rights to due process and confrontation by knowingly introducing false testimony from R.D. that he did not abuse her, in order to admit her CALICO interview. Less surprising, defendant did not object to R.D.'s testimony at trial or argue that her testimony was false. In any event, defendant's argument fails because he was not prejudiced by the testimony he now claims to have been false. Moreover, although the prosecutor anticipated that R.D. might recant, admission of her CALICO interview under section 1360 did not require that she recant. It required only that she testify. Had she testified to abuse by defendant the CALICO interview would have corroborated her testimony. Because the admissibility of her CALICO interview was not dependent on her giving false testimony, defendant was not prejudiced by her testimony in his favor.

*Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *18-19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b. The habeas court owes no AEDPA deference to the state courts' adjudication Petitioner's fair-trial and due-process claims as the state appellate court did not address them.

This Court owes no AEDPA deference to the state appellate court's opinion as it failed to address the federal claims presented by Petitioner with respect to the CSAAS evidence. *See Johnson*, 568 U.S. at 302-03 . Under 28 U.S.C. § 2254(d), a federal court owes AEDPA deference only to claims that were "*adjudicated on the merits* in State court proceedings." *See id.* (emphasis added). Although there is a presumption that a state court considered a federal constitutional claim, that presumption is rebuttable. *Id.* at 302-03. "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303.

Here, the state appellate court clearly overlooked Petitioner's federal claims with respect to the CSAAS evidence. It analyzed his claim under only state evidentiary rules as it cited only to state evidentiary rules and state precedent addressing those state rules. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at *9-11. The state appellate court failed to cite to *any* federal cases in its analysis or mention key due-process analysis phrases such as "fundamentally unfair." *Johnson*, 568 U.S. at 303. (the presumption that a claim was adjudicated on the merits is overcome where "a provision of the Federal Constitution or a federal precedent was simply

mentioned in passing in a footnote or was buried in a string cite"). Moreover, the state appellate court concluded that "[t]he court did not abuse its discretion under Evidence Code section 352 in admitting the expert testimony. *Molina*, 2021 Cal. App. Unpub. LEXIS 7679, at \*11. Accordingly, as the state court overlooked the federal claims, this Court reviews the claim *de novo*. *See Johnson*, 568 U.S. at 307.

### c. Relevant Law

"Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings." *United States v. Mandujano*, 425 U.S. 564, 576 (1976). The Supreme Court held in *Napue v. Illinois*, that "a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269; *see also United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) ("[A] conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict."); *Gimenez v. Ochoa*, 821 F.3d 1136, 1143 (9th Cir. 2016).

"To establish a *Napue* violation, a defendant must show: (1) that the testimony was actually false, (2) that the government knew or should have known that it was false, and (3) that the testimony was material, meaning there is a 'reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Renzi*, 769 F.3d 731, 751 (9th Cir. 2014). "The principle that a State

may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Napue*, 360 U.S. at 269.

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." The right to confront witnesses "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Rather, "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Id.* at 315-16 (emphasis in original).

The California courts have found that California Evidence Code § 1235 does not amount to a violation of the Confrontation Clause when it is used to introduce a witness' prior inconsistent statement for the truth of the matters asserted. *See People v. Freeman*, 20 Cal. App. 488, 493 (Cal. App. Ct. 1971). Citing to *California v. Green*, 399 U.S. 149 (1970), the state courts have maintained that § 1235 does not deprive a criminal defendant of the right to cross-examine the witness even where the prosecutor knowingly solicits the false testimony for the purpose of introducing the prior inconsistent statement. *Freeman*, 20 Cal. App. at 493.

The California courts, however, have unreasonably interpreted *Green*. Although the Supreme Court found it constitutional to introduce a witness' out-of-

court statement as long as the defendant has an opportunity to cross-examine the witness, nowhere did it permit the prosecution to knowingly introduce a witness's false testimony solely for the purpose of introducing the witness' prior statements upon which it must rely to secure a conviction. Rather, *Green*'s "precise holding . . . is that the Confrontation Clause of the Sixth Amendment does not preclude the introduction of an out-of-court declaration, taken under oath and subject to cross-examination, to prove the truth of the matters asserted therein, when the declarant is available as a witness at trial." 399 U.S. at 172 (Harlan, J. concurring). Where the prosecution puts on a witness that it knows is lying about events essential to the conviction, it necessarily denies the defendant the right to effective cross-examination of the prior statements which the witness has now recanted. *See United States v. Owens*, 484 U.S. 554, 561 (1988) (a witness is regarded as subject to cross-examination when he is placed on the stand, under oath, and *responds willingly to questions* (emphasis added) (internal quotation marks omitted)).

Indeed, "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Supreme Court has explained that respect for the oath is essential the Sixth Amendment right to confrontation and cross-examination. *Id.* at 845-46 (in addition to personal examination, the Confrontation

Clause "insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury" (internal quotation marks omitted)). "It would seem strange . . . to assert that a witness can avoid introduction of testimony from a prior proceeding that is inconsistent with his trial testimony . . . by simply asserting lack of memory of the facts to which the prior testimony related." *Owens*, 484 U.S. at 563. It would be even stranger, however, to permit the prosecution to solicit false testimony and put on a witness with no respect for the oath for the purpose of admitting the perjurer's out-of-court statements.

> **d. Petitioner was denied the right to due process under the Fourteenth Amendment where the prosecution introduced false testimony.**

Here, the prosecutor introduced what it believed to be R.D.'s false testimony at trial for the purpose of getting her prior hearsay statements, in which she implicated Petitioner in the charged crimes, into evidence. Indeed, R.D.'s CALICO and police statements were the only evidence at trial implicating Petitioner. As to the due-process claims, there is no doubt that the prosecution believed that R.D.'s testimony at trial was false as it admitted as much when it sought to introduce her prior CALICO and police interview statements. The use of R.D.'s false testimony was material, as it was only through her testimony that the prosecution was permitted to introduce her prior statements—the *only* evidence implicating Petitioner in the

charged crimes. Absent the use of the false testimony, there would have been insufficient evidence to convict Petitioner. Thus, R.D.'s false statements were necessarily material to procuring Petitioner's conviction and violated Petitioner's right to due process.

The introduction of R.D.'s false testimony also violated Petitioner's right to confront R.D. about her prior out-of-court statements. Although the Supreme Court has found that a defendant is not denied the right to confront witnesses where the witness claims memory loss and the defendant is permitted to impeach that witness, it has never indicated that the right to confront witnesses is preserved where the prosecution puts on a witness that it knows is lying under oath. *See United States v. Owens*, 484 U.S. 554, 564 (1988) (no confrontation clause violation by "admission of an identification statement of a witness who is unable, because of memory loss, to testify concerning the basis for the identification.") Petitioner was necessarily denied the right to effective cross-examination where the prosecution knows that the witness is lying about the prior statements and has no respect for the oath. Indeed, R.D. was emboldened to lie as the court failed to admonish R.D. that she was under oath and must tell the truth.

The introduction of R.D.'s out-of-court statements undoubtedly prejudiced Petitioner within the meaning of *Chapman*. 386 U.S. at 24. Absent these out-of-court statements, the prosecution had insufficient evidence to convict Petitioner.

1  Moreover, the knowing presentation of a lying witness prevented Petitioner from

2  effectively cross-examining R.D.

3
4  Based on the foregoing, this Court should grant the writ of habeas corpus.

5  Alternatively, this Court should grant an evidentiary hearing.

6
7                              **CONCLUSION**

8  WHEREFORE, based on the foregoing, this Honorable Court should grant

9  Petitioner's Petition for Writ of Habeas Corpus.
10

11

12      Dated: May 8, 2023                    Respectfully submitted,

13

14                                            SPOLIN LAW P.C.

15

16                                      By: /s/Aaron Spolin
                                             Aaron Spolin
17                                           Attorney for Petitioner

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case Name: Rember Genaro Molina on Habeas Corpus

I hereby certify that on May 8, 2023, I electronically filed the following document with the Clerk of the Court using the CM/ECF system:

**Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities**

I also served Petitioner's **Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities**, by causing to be placed a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail, addressed as follows:

LEGAL MAIL
Rember Genaro Molina, CDCR No. BH6781
California Health Care Facility, Stockton
P.O. Box 213040
Stockton, CA 95213
**Via US Mail**

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at Los Angeles, California, on May 8, 2023.

<u>/s/Aaron Spolin</u>
Aaron Spolin